Good morning judges. May it please the court, counsel. I'm Jan Olson and I represent Justin Morales. He was charged and convicted of conspiracy to distribute 500 grams or more of methamphetamine. We had filed a suppression motion in that case and the suppression motion was denied so that would be the first issue on appeal. We had also filed some motions in limine to keep out reference to firearms and marijuana. That motion was denied and so that would be the basis for our second issue and the third issue has to do with sentencing. So regarding the first issue, the suppression issue, the denial of the suppression motion would be reviewed de novo and the facts for clear error. The crux of the issue in this case is that they hadn't actually identified either my client or Chase Guzman as being in the van when it was pulled over. I understand that they had identified those two persons previously having been in the van, they'd identified them as the persons that they were investigating but at the time, well just prior to the time they were pulled over, they had not been identified as occupying that van. I don't understand why that's essential. Given that the amount of surveillance of the van, and this had a candidate plate, right? It did, your honor. Even if at running cranes, a trailer, two different people, the defendants had gone in and two different people had come out and driven away in that same van, why isn't there still probable cause to stop? Well, I think it's our position from the case law that it doesn't matter how much information they had on the persons they suspected to be in there, it's about the occupants that were actually in there. And so the Fourth Amendment covers, applies to people and the van is, it wasn't suspected, the van wasn't suspected of wrongdoing, the people that would have been in the van were the ones suspected of wrongdoing and that's why I think it's important that they identified the persons in the van. I haven't read the sentencing transcript. What was the testimony by the officers of the purpose for the stop? So from the suppression motion or the testimony, did they stop the van to arrest or did they stop the van to search or both? They stopped the van because they, based on the information that they had about who they suspected the occupants of the van were. So there had been an ongoing... Stop it because they suspected that there were drugs in the van based on what the informant had, they had heard from the informant's tapes. They did suspect that there were drugs in the van. Stop there, isn't that probable cause supporting the stop? I think they needed more than just a hunch that there was drugs in the van. I agree with that, but that doesn't, that doesn't deal with the identity of the occupants. You see where my, I'm not confused, I'm just questioning whether the occupants, if you're right about the occupants identity, of course the finding is contrary. But if you're, even if you're right about that, I don't see where that it requires a reverse will of no suppression. And what I would say, Your Honor, is that at the time that my client and the other person got into the van at the hotel, it was suspected they had drugs in there. They then went to Young Running Crane's house and went into the place and then three people came back out. It just so happened that two of them were my client and the co-defendant whose attorney is here today. So there was stops made in between. And so I, it's my position that at the time that they stopped the van, they didn't have enough information to suspect that the drugs were in the van. So would that require a reversal based on clear error in fact finding? Is that what you're asking us to do? Because didn't the district court find that the officers knew or had identified them as the two in the van? Yes. Yes, Your Honor. I believe that it does require the clear error. And the testimony at the suppression hearing about the identity of the persons in the van, I argue is what was, who got into the van at the hotel, not at Jerry Young Running Crane's And so the 404B issues then, if there's no other questions on the suppression motion, I think I'll keep my arguments brief on that as well unless there's, unless you would like to spend more time on them. But the other acts evidence, I characterize it as other acts. The government characterizes it as res gesti. It's my position that the marijuana and the guns, Justin wasn't charged with drug trafficking, gun trafficking. So I understand that the courts opinions have said that guns and drugs go hand in hand, so to speak. That's not word for word. But it's prejudicial to bring in the evidence of a gun that the co-defendant had in this particular case when it could have been easily kept out. And same thing with the marijuana. The marijuana, the reference to marijuana could have been kept out and they still would have had the methamphetamine that they found, which is what he was charged with, a conspiracy to distribute. Wasn't the marijuana a basis for one of the investigative events? So I think they could have done it without that. The morning of September 22nd, there was a recorded conversation that law enforcement had heard about. In that conversation, there was reference to ICE, Reggie, and a gun. That conversation could have been edited to keep out the Reggie or the marijuana and the firearm. And then the information about the methamphetamine would have come in. They believed, law enforcement believed at that time, so earlier in the morning on September 22nd, that they had enough information from the investigation to pull over the van. And so I think they could have done that without reference to the marijuana or the fact that they found it. Whether it would have been granted or not, I obviously don't know. So regarding Justin's sentence, the district court's interpretation of the sentencing guideline is reviewed de novo. And my first argument with this is that the district court said that she was only going to consider amounts that were actually seized. And there was 20 ounces of methamphetamine from a discussion between the CI and my client on April 20th. When did the judge say this? At sentencing. As a finding or as a sort of a comment? Because it certainly wasn't, the court wasn't required to limit the relevant conduct to the amount seized. I understand. I agree with you on that. And I think that it was an erroneous finding because I think she intended to find that, to include only the amounts that were actually confiscated and ended up including some amounts that were just discussed. So these amounts were, this amount was like thrown out there. Or did she intend to include all of it, but she mistakenly thought all of it was confiscated? I don't think she thought it was all confiscated. Because in paragraph... That was your point. She said it was, well, go ahead. I'm sorry. I think it's paragraph 10 of the sentence report says that it was discussed. And that the amount was discussed, but not confiscated. Right. But I thought you said the judge mistakenly later said that she was, everything she was confiscated. Right. I think, I think she intended... So she may have thought that that amount that was discussed was actually confiscated, but that was incorrect. If that's what she thought, that would be incorrect. I see. You don't think that's what happened. All right. Well, why couldn't it be counted even though it wasn't confiscated? Because it was, it was, there was never an agreement. The case law I think is pretty clear in the comments to the, say that the, the drugs need to be, there needs to at least be an agreement, even if they weren't actually delivered. In this case, there was no agreement for that 20 ounces. It was... Why does there have to be an agreement? Suppose a buyer is saying, I might be interested in 20 ounces and the seller says, well, I've got 20 if you ever need them. Why isn't that enough right there to count the 20? So the Note 12 to 2D1.1 and Brown versus the U.S. talk about that there needs to be an agreement for the quantity. And even if that agreement is delivered or if the amount that's actually delivered is different than you use that amount, but there still has to be an agreement, not just a discussion about possibilities of getting amounts that may or may not exist. And my time is up. Thank you. And Ms. Olson, I understand, I believe you were appointed under the Criminal Justice Act and the court needs your help. Thank you. It's been very fun. Mr. Henrich. Good morning. I believe you also were appointed and the court likewise appreciates your assistance. Thank you, Your Honor. I appreciate that. My name is John Henrichs. I represent the appellant, Chase Logan Guzman. We raised the same suppression issue that Ms. Olson has argued before this court. And I would ask the court to allow me to join in her arguments. I would only add that we are relying on the language in Navarrete versus California that law enforcement is required to have particularized an objective basis for suspecting the particular persons stopped of criminal activity. In this case, the fact that law enforcement was fortunate enough that the people that they hoped were in the vehicle were in fact in the vehicle, we do not believe is enough to justify the traffic stop. But they can stop it for drugs with probable cause that they're drugs anyway. Your Honor, I would still assert that they have to have particularized suspicion of the people in the vehicle and that there was not a basis to believe that there were drugs in the vehicle to justify the stop. That's part of the factual error that we are asserting here. In addition, we believe that it was not true that they knew that my client or Ms. Olson's client were in the vehicle when it was stopped because there was no actual evidence that they were aware of the identities of the people who drove away from the Young Running Crane residence. Was there any suggestion that there was anyone else that ever drove that van during the course of their surveillance that you could point to to say, see, it's equally likely that it's person A and person B as it is the two co-defendants here? There was no evidence that anybody else drove the vehicle. There was evidence that several other people had access to the vehicle and had been passengers in the vehicle, including the confidential informant, some other people that they'd given rides to earlier in the residence. Law enforcement had no idea how many people or who was actually in the residence, so it was not beyond the realm of possibility that somebody else came out and got into the vehicle and drove away. If I may move on to my second issue, we are challenging the court's conclusion at my client's sentencing that Dean v. United States did not permit the court to take into consideration the five-year mandatory minimum sentence that was imposed on count two when imposing the sentence on count one. Mr. Guzman asserts that his sentence exceeded, that the court felt compelled to impose a sentence that was greater than necessary to comply with the four purposes set forth in 18 U.S.C. 3553A2. In Dean v. United States, the United States sentencing court from considering a mandatory minimum imposed under that provision when calculating an appropriate and, the Supreme Court specifically said, just sentence on the predicate offense. Look, if Dean did not specifically legitimize going below a mandatory minimum, where does that leave us with the legal issue? I think that the legal issue is that the language that the Chief Justice used in the Dean decision was a just sentence. The court can impose a just sentence on the predicate offense. And I think that- But we've had myriad of unjust, so to speak, refusals to go below mandatory minimums for the last almost 35 years. And my argument is that in this case, Dean gives you the opportunity to do that in a situation where a 924C sentence is going to make an aggregate sentence that is unjust. The Dean holding really relies on the fact that we're talking about an aggregate sentence here. My client received 15 years. By the time he's released from prison, he'll have served nearly 40 percent of his life between jail and prison on this one charge. He was 20 years old when this offense was committed. The district court recognized that this was not necessarily a just sentence that the court felt compelled to impose. The district court commented that they would have imposed a less than 120-month sentence on the first count if they felt that Dean allowed them to do that. This was the legal issue that we raised. The court ruled on it. I believe that this court's analysis of the district court's conclusion in that regard is de novo, that it's a legal issue, and I would ask the court to address it as such. Is there any other court, circuit, district court, that has adopted your argument that you know of? I'm afraid not. And I conceded in my brief that there have been district courts and other circuits that have rejected my argument in all candor to this court. I am unaware of any circuit court decisions from any circuit, and I spent a lot of time looking the last few days, but I'm unaware of any circuit court decisions that have adopted my argument. Most of the decisions rely on predicate offenses that don't by themselves purport to carry a mandatory minimum like the one in my case. So I recognize that this is probably an issue of first impression, at least for this court. The government argued in its brief that this issue was waived by my client when he entered into his plea agreement. I just want to address that very quickly by pointing out that there was no objection by the government to this issue being raised in front of the district court. It was raised in my pre-trial sentencing brief. It was addressed and argued on the merits by the government and myself before the district court. The court ruled on it on the merits and came to the conclusion that we're asking this court to revise. I believe that that issue has been, that it was foreclosed by the plea agreement has been waived. And with that, I see that my time is up. So unless the court has questions. Why do you say that the government waived it? Because they didn't stand up and say you've waived it when you argued it? Is that the point? My, yes, your honor. My understanding is that had the government done something that would have violated the party's plea agreement, it would have been incumbent upon the defendant to stand up and object at the time of sentencing or risk waiving that issue. I believe that the rule should be reciprocal. I see. May I be excused? Mr. Hock? Thank you. This case is consolidated to appeals. We filed two briefs. We filed the Guzman brief before they were consolidated. Excuse me, I've got a cold today. And then when Mr. Morales appealed, we filed a brief responding to his issues. They have two issues in common as we've heard. That is that vehicle stop issue. So I'd like to address that first. Okay. Leading up to the vehicle stop, there's a long, complicated set of facts. But I think I can simplify it for the court today. If we just pick out a couple of the facts and concentrate on those, the others are just fillers. In March of 2016, Mr. Morales contacted the CI trying to set up a drug deal, four ounces of methamphetamine. That was recorded. The CI had proven to be reliable. It had already been given the recording equipment. So we have the recording of that conversation. That deal did not... Counsel, we have over 100 pages of magistrate court judge and district judge opinions here. Why don't you assume we've read those and not take us through it again? I appreciate your point, Your Honor. Just hit the highlights. I'll just try to hit the... What do you say to the argument that the officers didn't know who was in the van and therefore there wasn't probable cause? That seemed to be the lead argument. Do you want to cut to that? I agree with the points that seem to be made by the court that it doesn't matter who's in the van. It's the criminal activity. I don't think the court was making any arguments. We were just asking questions. Okay. But I do want to point out a couple of places where I can clarify that it's just flat wrong to say that police did not know who was in the van. In the motion hearing transcript, page 209, that's docket number 99, police officer testified he identified who was getting in the van at the trailer house that led to this burn run and the traffic stop. So are you saying that there was surveillance from the time that they saw the two people get in, the two co-defendants get into the van and the time was pulled over? Because they're suggesting there's stops in between, there's a span of time between the time they saw these two folks getting into the van and the time it was actually pulled over, if I understand correctly. I submit that their suggestion of interrupted surveillance is incorrect. It's the government's position and found by the district court and the magistrate that these two defendants were seen getting into the van and there was unbroken surveillance of that van from the point they got into it until the time it was traffic stopped. So, and just quickly running through the five places in the record where we see that motion hearing transcript, page 209, the report and recommendation at page 9, the order adopting the report and recommendation at page 5, the trial transcript at page 227, all show that law enforcement knew who was in that van. What if they didn't know, what if there wasn't sufficient information to allow them to identify those two people? Was there sufficient evidence in the record that there would be drugs in the van as has been discussed earlier? Yes, there were. The reliable informant had already reported what he had been involved in that day to law enforcement including the fact that he had seen the packages of what he believed to be methamphetamine in the pizza box and that went into the van. So, that van then went to the stash house that had been already established that Jerry Young running crane, that house is being used as a stash house. That's where the van went. That's where these two defendants went into for a few minutes and then came out of and got back into the van. We also knew that these individuals were going to travel to what Mr. Morales referred to which is an Indian reservation in South Dakota to sell drugs. And as they were doing this burn run, the crusty old sergeant who testified at trial said, that's enough. ATF wanted to continue investigating and finding out who else was involved. The sergeant said, that's enough. Get a patrol car. Stop that car. And what did we find? All these facts that we believed to be true were proven to be true. Meth, marijuana, firearm, all in the van with these two defendants. I want to skip forward to the issue that Mr. Guzman raised about the Dean case. We do assert that he has waived this due to the appellate waiver that's in our plea agreement. And as the Andis case says, plea agreements are contracts. They're contractual in nature. And in this case, the defendant and the government negotiated a contract. And that was a conditional plea agreement with two enumerated exceptions to the appellate waiver. One was this suppression issue that we just heard of. The second was any decision by the court to depart upward pursuant to the sentencing guidelines, as well as the length of his sentence for determination of its substantive reasonableness, should the court impose an upward departure or an upward variance. The court did not impose an upward departure or an upward variance. So neither of the provisions of the appellate waiver apply. In fact, in this case, the court gave a downward, a substantial downward variance. The guideline range started at 135 on predicate offense. She varied downward to the 120 mandatory minimum. The defense argues that we've somehow waived our reliance on our appellate waiver because he was allowed to argue this issue at sentencing. That was within his right. We did not reach an agreement, a plea agreement, that prohibited him from making sentencing arguments. So he went to the district court, as he was allowed to, made his sentencing argument on Dean. The government opposed that sentencing argument at sentencing. The district court, the sentencing court, agreed with the government's position and stated that the mandatory minimum could not be reduced based on Dean. After all of the issues had been fought out, the court had made her ruling on that decision and stated the sentence she intended to impose and asked if there were any objections to this, any reason this sentence she stated could not be imposed as stated. Government said no. And in a non-responsive answer to that question from the court, the defendant said, I want to note for the record my objection based on Dean and please place my defendant close to his home. The judge said, I'll place him, I'll recommend that he be placed close to his home. There was no waiver in that end of the hearing conversation between defense counsel. It's fine that he noted it for the record, but that doesn't mean he's modified the contract that we had. If he wanted to present the Dean issue to this court, he should have negotiated that when we negotiated the rest of the conditional plea agreement. So he never said expressly, I preserve this issue for appeal, as you've represented? No, what he said was, I want to note my objection for the record. Could you address the 20 ounces of drugs that were apparently not confiscated but counted? Yes, thank you. While that was going on in the sentencing hearing, the judge was juggling three concepts. One was 20 pounds going to be included, 20 pounds that was discussed at a separate occasion. Two was the 20 ounces that this defendant offered to sell to the CI for $16,500. Should that count? And three, what should the purity be of the methamphetamine that wasn't tested for purity? She made a conclusion on the purity. She declined to include the 20 pounds. And she said, but she was going to include the 20 ounces. And then as part of this discussion, in passing, she points to paragraph 18 of the pre-sentence report. Where all of the quantities that she included are listed, including the 20 ounces. And her passing comment, we believe, was a misstatement. She said, I'm going to include everything that's in paragraph 18 because that was confiscated. We knew that it wasn't confiscated. The court knew. She had participated in the suppression issues, a trial, a sentencing that had gone on, as a matter of fact, into the second day. So she was well aware of the facts of this. It was just a simple misstatement on her part. We submit that even if she intended only to count the confiscated, which she's not restricted to, this is harmless error because she, in this case, also made a downward variance from a life guideline down to 360 months. So 360 months is within the guideline range for this defendant's criminal history category, level 37. That's lower than what the defendant is arguing in this appeal that should have been applied. If you do the math on the defendant's argument... If she'd started at a lower point, she would have varied to a lower point. That's not the argument that was made. I see the assumption. But the judge said, I'm going to vary down because I think this is the appropriate sentence. After all the analysis, she still did the 3553 calculation and decided that 360 months was appropriate, regardless of what the guideline range was. Did she say that last part, regardless of what the guideline range was? No. What she said was, I find this to be appropriate, and it's in the Statement of Reasons. Yeah, I know. I know. But she's got to consider the guideline range as part of the 3553A analysis, don't you think? Yes, and she did. She did, but if she was using the wrong range, the argument goes, then that might change the analysis. We submit that it's still harmless error, Your Honor, because of the extent of the variance downward. And it would have to be at least five and up to seven levels in order for it to be outside of a guideline range. Well, do you think the counting of the 20 ounces can be affirmed, even though she was mistaken about whether or misspoke, however you want to put it, about whether it was confiscated? Yes, I certainly do. Why is that? Because this is not, as this counsel was arguing, an agreement that didn't come to fruition. Under Application Note 5 of Guideline 2D1.1, it tells us that types and quantities of drugs that have not been seized can be counted if the seized drugs don't reflect the scale of the offense. So it's entirely appropriate to count this, and this was not pie in the sky, 20 ounces. The defendant, Mr. Morales, was trying hard to get the CI that day to take the 20 ounces because he didn't want to mess around with small quantities like four ounces or a half a pound. He was trying hard. He pulled out a calculator and did the math to show the CI how much money he could make if he would agree to buy the 20 ounces for $16,500. Without more findings about an agreement there, is there any risk that that's double counting? That that 20 ounces could have popped up later in an actual sale? That was an April 20th conversation. And weren't there control buys after that in June? There was a control buy after that conversation. For how much? For four ounces with an additional one ounce gifted to him, so five ounces total in that transaction. But I don't think we have double counting because the facts show that Mr. Morales was up there with another defendant. They were up there selling bulk methamphetamine to their customers and they were trying to get rid of everything they could that day. So the other co-defendant, unnamed and unknown to us, was back at a separate hotel with more methamphetamine. So I don't think we risk double counting in that case. Well, and you're also saying the most double counting, even taking a broad view of it, would be five ounces? Correct. There'd be 15 that couldn't have been double counted. Would that change the range? Yes, it would, Your Honor. It would drop it from the 31,000 kilograms of marijuana equivalent to below the 30,000. And that would drop to two levels. Okay. I see I'm into the amount of time I'm trying to reserve. Oh, I can't reserve. I'm sorry, Your Honor. I've got a five-minute warning here, though. So I'd like to talk about the other acts motion that was denied. And we believe the court was correct in that because, in this case, it wasn't law enforcement that tried to force these different substances to Mr. Morales. Mr. Morales talked about marijuana and methamphetamine in the same breath. But he was not charged with marijuana, correct? No, he was not. There was a single drug conspiracy. Yes, it was. Although he was a polysubstance drug dealer, he was charged only with the conspiracy for the methamphetamine. But he is the one who talked about the marijuana and methamphetamine together that he had brought up. The marijuana was found in the car, which led to the car search. The marijuana and methamphetamine and gun were all in the van at the same time. So, again, Mr. Morales is mushing these facts together, making it impossible for the government to tell the story of this conspiracy without reference to those facts. You could have told the story of the methamphetamine, however, without the marijuana, don't you think? If you didn't end up charging it, it probably was not. I'm suspecting that the office didn't feel it was a significant enough part of the conspiracy or the illegal activity to include in the indictment. Slice it out. No, that's not true at all from my point of view, Your Honor. The charging decision was made giving consideration to sentencing issues. And it doesn't matter for sentencing issues if you have 17 counts or one count. And you can see the history in our office. We generally charge one conspiracy count. And if in a case like this, you can't tell the story without referencing the other issues, we reference the other issues. But this case is also a good example of where we don't put in things that aren't needed to tell the whole story. In this case, we had photographs of Mr. Morales holding guns, displaying guns, doing things on the Internet with firearms, other conversations with the CI about guns. We didn't put any of that in. We limited that out because it wasn't needed to tell the story in this case of the methamphetamine conspiracy. Only the two firearms were talked about and only the marijuana that was found to lead to the search of the car and the marijuana that was found, stored by Mr. Morales with methamphetamine. That's the only references to other substances or other acts. I'm sorry, I'm drying up today. I see I'm down to 30 seconds. If the court has no other questions, I'll take my seat. Very good, thank you. You've used your time and I think we understand all the issues. You cut into it. You fused it up. You both did. The case has been thoroughly briefed and argued and raised interesting issues and we'll take it under advisement. Both of them. Please call the next case. Next case is 18-11-48, District of Minnesota. Tom Johnson v. Patrick McCarver et al.